UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Magistrate No. |
| | : | |
| v. | : | Violation: |
| | : | 18 USC § 1344 (Bank Fraud) |
| **IMRAN AWAN,** | : | |
| | : | |
| Defendant. | : | **FILED UNDER SEAL** |

I, Brandon C. Merriman, being duly sworn, depose and state:

## INTRODUCTION

1.  I make this affidavit in support of a criminal complaint charging IMRAN AWAN ("AWAN") with knowingly engaging in a scheme or artifice to defraud the Wright Patman Congressional Federal Credit Union (hereinafter, "CFCU") to obtain money owned by, and under the custody and control of CFCU, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344. This affidavit is also submitted in support of an arrest warrant.

## AGENT BACKGROUND

2.  I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed since January 2016. My principal duties include the investigation fo criminal allegations of bribery and corruption involving public officials, mail and wire fraud, and government fraud. I have training and experience in the enforcement of the laws of the United States, including the preparation and presentation of affidavits in support of complaints and arrest warrants. I have had both training and experience in the investigation of crimes involving fraud and have worked with other FBI agents who have such experience, and who have provided me with additional information about such crimes. I have received training in the investigation of various federal crimes from the FBI Academy in Quantico, Virginia.

1

## SOURCE OF INFORMATION

3. The facts and information contained in this affidavit are based upon my personal knowledge of the investigation, information obtained from other law enforcement personnel, a review of documents related to this investigation, and information obtained from interviews and analysis. All observations referenced in this affidavit that were not made by me were relayed to me by the person who made such observation. Unless specifically indicated, all conversations and statements described in this affidavit are relayed in substance and in part only and are not intended to be a verbatim recitation of such statements. When I specify that a communication occurred on a specific date, it should be construed that the communication occurred "on or about" the date specified.

4. This affidavit is submitted for the limited purpose of establishing probable cause. Because this affidavit is limited in purpose, it does not contain all information known to me, other law enforcement officers, or the United States Government.

## FACTS SUPPORTING PROBABLE CAUSE

5. Based upon a review of records, your Affiant knows that AWAN married his wife, HINA ALVI ("ALVI"), sometime before 2014. They remain married.

6. Based upon records obtained from the Fairfax County Courthouse, ALVI purchased 4809 Sprayer Street, Alexandria, Virginia 22309 (hereinafter, the "Sprayer Street Property") on November 7, 2014, for $187,500.00.

7. CFCU was a financial institution with deposits insured by the Federal Deposit Insurance Corporation. CFCU was in the business of, among other things, loaning money to individuals who used their primary residences to secure the loans. One of those loans was known as a "home equity line of credit" or "HELOC" where an individual could pay off an original loan

and/or take periodic cash advances up to a specific maximum amount of money (with funds available to be drawn against the line of credit if the individual paid back some of the borrowed money).

8. Based upon a review of records that your Affiant obtained from CFCU, ALVI applied for a HELOC loan from CFCU for the Sprayer Street Property on or about December 12, 2016. As part of that loan application, ALVI submitted to CFCU her federal tax returns for 2014 and 2015. Those tax returns showed that ALVI filed jointly with her husband, AWAN, and that they listed no rental income on their tax forms.

9. As part of ALVI's HELOC loan application, she also listed her W2 income for Year 2015 as being $157,531.00, which matched the amount of income listed on her actual W2 issued by the U.S. House of Representatives. On a portion of her HELOC loan application asking whether she had any "Other Income," ALVI did not list anything, again indicating that she was not earning rental income.

10. Based upon a conversation that your Affiant had with the Assistant Vice President of Security at CFCU, your Affiant knows that CFCU does not normally provide HELOC loans where the house used to secure that loan is being used as rental property. This is because rental properties are considered riskier forms of collateral than traditional primary residences.

11. On July 10, 2017, U.S. Capitol Police Special Agent Sean A. Camp interviewed Person A in reference to this investigation. Person A stated that Person A and their spouse, Person B, rented the Sprayer Street Property from June/July 2015 through October 2016. Person A stated that they found the Sprayer Street Property through a website that lists rental properties. Person A stated that her primary point of contact regarding the rental of the Sprayer Street Property was AWAN, but that Person A also had interactions with ALVI as well. Person A stated that they paid

approximately $2,000 per month for rent and that the rent check was written to SURIAYA BEGUM ("BEGUM"). Based upon information and belief, I know that BEGUM is ALVI's mother.

12. Furthermore, on July 24, 2017, Special Agent Camp and your Affiant interviewed Person C, who we discovered using law enforcement databases. Person C informed us that Person C resided at the Sprayer Street Property from December 2016 through May 2017, and that Person C signed a six-month lease to that effect whereby Person C paid $2,100 in rent per month to ALVI. Person C also provided Special Agent Camp and your Affiant with a copy of that lease.

13. The application for the HELCO loan also asked, "Do you intend to occupy the property as your primary residence?" ALVI answered "Yes." The application also asked for the "purpose of refinance," and ALVI answered, "Cash out home improvement."

14. The HELOC loan application for the Sprayer Street Property also asked for the "sex" of the person completing the form. The person completing the form listed "male." The application also asked for the phone number of the individual completing the form. The phone number (202) 604-7650 was listed. Your Affiant knows, from records received from Verizon, that the subscriber listed for this number is AWAN. In addition, a current tenant of another rental property owned by ALVI informed Your Affiant that the tenant communicates with AWAN using the (202) 604-7650 phone number.

15. The HELOC loan application also asked ALVI to list all real estate she owned, and whether it was being used for rental income. ALVI listed the Sprayer Street Property and stated that no rental income was being earned on that property. ALVI also listed a property at 4387 Pembrook Village Dr., Alexandria, Virginia 22309 (hereinafter, the "Pembrook Village Property"), and stated that she earned $1,650.00 in rental income on that property.

16. On December 12, 2016, at 12:37:48 PM, CFCU sent an invitation to ALVI to electronically sign the HELOC loan documents to the email address "imranawan1@gmail.com." Through the course of this investigation, and through interviews and subpoena returns, your Affiant has learned that the email address "imranawan1@gmail.com" was used by AWAN to communicate with tenants and financial institutions. Based on a review of the contents of this email account, your Affiant does not believe that this email account was never used by ALVI.

17. On December 12, 2016, at 12:39:11 PM, records obtained from CFCU showed that ALVI consented to sign the HELOC loan documents electronically. On December 12, 2016, at 12:41:19 PM, these records showed that ALVI electronically signed the HELOC loan application. The Internet Protocol ("IP") address used to consent and sign the HELOC loan documents was 143.231.249.139. Your affiant knows that this IP address belongs to the U.S. House of Representatives, whose servers are located within the District of Columbia.

18. On January 3, 2017, a loan officer (the "Loan Officer") at CFCU who was processing the HELOC loan application sent an email to "imranawan1@gmail.com" asking the following questions:

> Good Afternoon Mr. [*sic*] Alvi,
>
> I received your file back from the Underwriter. There are a few items needed before a final approval can be received. I have listed below the pending documents needed:
>
> 1. Please provide a copy of the current lease agreement for rental 4387 Pembrook Village Dr. Alexandria Virginia 22309
>
> . . . .
>
> 4. Please write a statement why 2014 and 2015 tax returns are not showing rental income for 4387 Pembrook Village Dr. Alexandria VA
>
> Thank you

19. On January 4, 2017, an email was sent from imranawan1@gmail.com to the Loan Officer at CFCU in response to the Loan Officer's January 3rd email. Attached to the email was a letter that stated:

> January 3, 2017
>
> To Whom It May Concern:
>
> 4387 Pembrook Village Dr. Alexandria VA 22309 property was not on my 2014 and 2015 tax returns as a rental because it was not rent out during those years.
>
> Regards,
>
> Hina Alvi

On that same day, another email was also sent from imranawan1@gmail.com to the Loan Officer at CFCU. Attached to that email was a Residential Lease Agreement dated February 4, 2016, between ALVI and her mother, BEGUM, for the Pembrook Village Property. According to this Residential Lease Agreement, ALVI was renting the Pembrook Village Property to BEGUM for 24 months, commencing on March 1, 2016 and ending on March 1, 2018.

20. As part of this investigation, your Affiant performed a search of law enforcement databases and found individuals associated with the Pembrook Village Property, including Person D and Person E. On July 20, 2017, your Affiant spoke to Person D and Person E, and they informed your Affiant that they were renting the Pembrook Village Property from ALVI. Person D and Person E also provided your Affiant with a Lease Agreement dated August 16, 2014, between ALVI and Person D and Person E. The term of the lease was August 16, 2014 through July 28, 2017.

21. On January 5, 2017, the following email was sent from imranawan1@gmail.com to the Loan Officer:

> Hi [Loan Officer],

6

> When will you have an answer on both of our HELOC approval? And what are the soonest closing dates please? Kindly advise….

22. On January 5, 2017, the Loan Officer sent an email to imranawan1@gmail.com stating that the HELOC loan was approved for the Sprayer Street Property in the amount of $165,000.00. That same day, an email was sent from imranawan1@gmail.com to the Loan Officer accepting the HELOC loan.

23. The closing for the HELOC loan occurred on or about January 12, 2017. As part of that closing, ALVI was asked to execute an Occupancy and Financial Status Affidavit. On that affidavit, which was used as a material inducement to CFCU providing the HELOC loan, ALVI stated that the Sprayer Street Property was being used as her "principal residence" and that:

> "Borrower will occupy and use the Property as Borrower's principal residence within 60 days after Borrower signs the Security Instrument. Borrower will continue to occupy and use the property as Borrower's principal residence for at least one (1) year from the date that Borrower first occupies the Property."

As indicated above, as of January 12, 2017, Person C was residing in the Sprayer Street Property and had lease agreement allowing Person C to reside there until June 2017.

24. Based on our investigation, which included physical surveillance and interviews of individuals, your Affiant learned that AWAN and ALVI were residing at 9667 Hawkshead Drive, Lorton, Virginia 22079 until on or about February 16, 2017. On or after February 16, 2017, AWAN and ALVI have resided a two other residences, neither of which is the Sprayer Street Property.

25. On January 18, 2017, at 12:09 pm, an international wire transfer request form was submitted by ALVI at CFCU's branch at the Longworth House Office Building, in the District of Columbia, in the amount of $283,000.00, to two individuals in Faisalabad, Pakistan. On the

international wire request form submitted by ALVI, she provided the contact number of (202) 225-0346 and an email address of imranawan1@gmail.com.

26. On January 18, 2017, at 3:23 pm, a representative from CFCU called (202) 225-0346 and requested to speak with ALVI in regards to the wire transfer request. The person answering the call, who was a male, pretended that he was ALVI. On the call, the representative asked the man to verify the address of where the wire was being sent and the purpose of the outgoing wire. The male speaking to the representative said that the purpose of the wire was "funeral arrangements." The CFCU representative then stated that "funeral arrangements" may not be an acceptable reason for the wire. The male speaking to the representative then responded that he would look online for an acceptable reason for the wire. After a long pause, the male said that the reason for the wire was "buying property." The representative accepted that reason and initiated the wire transfer to Pakistan. Bank records show that $165,000.00 of $283,000.00 wired to Pakistan was from the HELOC loan for the Sprayer Street Property.

27. On March 5, 2017, your Affiant, along with agents from the FBI and U.S. Capitol Police, approached ALVI at Dulles International Airport, in Dulles, Virginia. ALVI was about to board Qatar Airlines, Flight 708, to Doha, Qatar, on her way to Lahore, Pakistan. ALVI was with her three children, who your Affiant later learned were abruptly taken out of school without notifying the Fairfax County Public School System. ALVI had numerous pieces of luggage with her, including cardboard boxes. A secondary search of those items revealed that the boxes contained household goods, clothing, and food items. U.S. Customs and Border Protection conducted a search of ALVI's bags immediately prior to her boarding the plane and located a total of $12,400.00 in U.S. cash inside. ALVI was permitted to board the flight to Qatar and she and her daughters have not returned to the United States. ALVI has a return flight booked for a date

in September 2017. Based on your Affiant's observations at Dulles Airport, and upon his experience and training, your Affiant does not believe that ALVI has any intention to return to the United States.

28. AWAN has purchased a flight on Qatar Airlines, Flight 708, departing from Dulles International Airport on July 24, 2017, to Doha, Qatar, at 8:45 pm, and then to Lahore, Pakistan. He has purchased a return flight for a date in January 2018.

## CONCLUSION

29. For the foregoing reasons, your Affiant submits there is probable cause to believe that AWAN and his wife, ALVI, engaged in a scheme to defraud CFCU, by obtaining a HELOC loan based on two material misrepresentations made to CFCU, a financial institution with deposits insured by the FDIC: (1) a misrepresentation regarding their use of the Sprayer Street Property as a primary residence and not as a rental property; and (2) a separate misrepresentation; regarding ALVI's intention to use the Sprayer Street Property as her permanent residence following the closing of the HELOC loan even though she was renting the property to Person C at the time. These misrepresentations were material and caused CFCU to provide AWAN and his wife, ALVI, with a HELOC loan in the amount of $165,000.

_____
Brandon C. Merriman, Special Agent
Federal Bureau of Investigation

REVIEWED:

_____
Michael J. Marando
Assistant United States Attorney